FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2012 JUN 29 P 4: 07

CLERK'S OFFICE
AT BALTIMORE

BY____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRANDON GRIMES,
    Plaintiff

    v.      : CIVIL ACTION NO. JKB-11-2687

WARDEN, BALTIMORE CITY
    DETENTION CENTER[1]
TACTICAL TEAM, BALTIMORE CITY
    DETENTION CENTER
CORIZON, INC., f/k/a CORRECTIONAL
    MEDICAL SERVICES, INC.
BALTIMORE CITY DETENTION CENTER:
    Defendants

## MEMORANDUM

On September 19, 2011, Brandon Grimes, a Maryland Division of Correction ("DOC") prisoner confined at North Branch Correctional Institution at Cumberland ("NBCI"), filed a civil rights complaint pursuant to 42 U.S.C. § 1983 seeking money damages. Grimes complains that on October 15, 2008, he was "maliciously beaten" by the Tactical Team at Baltimore City Detention Center ("BCDC"), where he was then confined.[2] He also complains that after the beating he was denied a mattress, sheets, and toilet paper. Grimes also states that medical staff failed to properly treat his injuries and, as a result, he urinated blood. ECF No. 1 at 4. These claims required response. The BCDC defendants—who include BCDC itself, the Warden for BCDC, and the Tactical Team for BCDC—have filed a motion to dismiss or for summary

---

[1] The Clerk shall amend the docket to reflect the full and proper names of the defendants.

[2] It is not entirely clear whether Grimes was a pretrial detainee at the time of the alleged beating, or was already convicted in the killing of a law enforcement officer. The constitutional protections afforded a pretrial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)); *see also Riley v. Dorton*, 115 F.3d 1159, 1167 (4th Cir. 1997) (pre-trial detainee's Fourteenth Amendment right with respect to excessive force is similar to prisoner's Eighth Amendment right).

judgment (ECF No. 11), which shall be construed as a motion for summary judgment. Defendant Corizon, Inc. ("Corizon," formerly known as Correctional Medical Services, Inc., or "CMS"), also has filed a dispositive motion construed as a motion for summary judgment. ECF No. 14. Grimes has filed an opposition response. ECF No. 23. No hearing is necessary to resolve the issues currently before this court. *See* Local Rule 105.6 (D. Md. 2011).

## Standard of Review

As noted, defendants have moved to dismiss or, in the alternative, for summary judgment. "'The purpose of a Rule 12(b)(6) motion [to dismiss] is to test the sufficiency of a complaint.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts that plaintiff alleges are true, the complaint fails, as a matter of law, "to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). Therefore, in considering a motion to dismiss under Rule 12(b)(6), a court must "'accept[ ] as true the well-pled facts in the complaint and view[ ] them in the light most favorable to the plaintiff.'" *Brockington v. Boykins*, 637 F.3d 503, 505–06 (4th Cir. 2011) (citation omitted).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, Rule 12(d) permits a court, in its discretion, to consider matters outside of the pleadings on a motion under Rule 12(b)(6). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *See Finley Lines Joint Protective Board Unit 200 v. Norfolk Southern Corporation*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as

one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."). This court deems it appropriate to consider the extraneous materials, as they are likely to facilitate disposition of this case. Accordingly, defendants' motions shall be treated as motions for summary judgment.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In resolving the motion, this court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

Additionally, because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, the court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### Analysis

Correctional Defendants

Counsel for BCDC seeks its dismissal on the basis of immunity. ECF No. 11 at 6. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Penhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland, which operates BCDC, has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. For this reason the motion to dismiss made on behalf of BCDC must be granted.

Grimes's claim against the Warden appears to be based on supervisory liability, known as respondeat superior. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268

4

F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Such a showing has not been suggested here with regard to either the alleged assault by the Tactical Team[3] or the conditions of Grimes' cell.[4] Further, the affidavits provided by Grimes indicate "the obvious use of force against [Grimes] was not condoned by the detention center and...an investigation was being conducted." ECF No. 23, Affidavit/Declaration of Tanielle A. Grimes; Affidavit/Declaration of Charlene Grimes. Nonetheless, the affidavits provided by Grimes's

---

[3] In order to prevail on a claim of failure to protect from violence, Grimes must establish that the Warden exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987).

[4] The inquiry with respect to conditions of confinement is whether those conditions amount to punishment of the pretrial detainee because due process proscribes punishment of a detainee before proper adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "[N]ot every inconvenience that is encountered during pre-trial detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). A particular restriction or condition of confinement amounts to unconstitutional punishment in violation of the Fourteenth Amendment if it is imposed by prison officials with the express intent to punish or it is not reasonably related to a legitimate, non-punitive goal. *Bell*, 441 U.S. at 538–39 (restrictions or conditions that are arbitrary or purposeless may be considered punishment). In determining whether the challenged conditions amount to punishment, it is not the province of this court to determine how a particular prison might be more beneficently operated; the expertise of prison officials must be given due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995). Only conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* "sufficiently serious,"' and that '*subjectively* "the officials act[ed] with a sufficiently culpable state of mind."'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (alteration in original; citation omitted). To withstand summary judgment on a challenge to prison conditions, a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Such injury is not shown here.

5

family members, read in conjunction with medical records suggesting no medical care was provided to Grimes at the time of the incident, suggest that the Warden may not have delivered on his assurance to Grimes's family that "the resulting dental concerns would be taken care of, as would related health concerns." ECF No. 23, Affidavit/Declaration of Charlene Grimes. Summary judgment in favor of the Warden is therefore denied with regard to the issue of whether adequate medical care was provided for injuries Grimes allegedly sustained as a result of the October 15, 2008, incident.

The Tactical Team—whose members remain unidentified—has raised Grimes's failure to administratively exhaust his claims against them as a procedural defense. The Prison Litigation Reform Act ("PLRA") generally requires a prisoner to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Grimes's allegations that he was beaten without provocation and thereafter placed in a cell without a mattress, sheets, and toilet paper. His complaint against these defendants must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense.[5] *See Chase v. Peay*, 286 F. Supp. 2d

---

[5] The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *See Chase*

523, 528 (D. Md. 2003). Thus, the exhaustion defense can succeed only if administrative remedies are actually available to the prisoner, and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of available remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Grimes states BCDC did not have an administrative process. ECF No. 1 at 3. This argument is clearly refuted by the affidavit submitted by Kelvin L. Harris, Director of Standards Compliance and Litigation for the Division of Pretrial Detention and Services, who indicates a four-step exhaustion process is available and is provided to detainees as part of their orientation process. ECF No. 11, Exhibit 1, ¶¶ 4-5. Harris's review of the records indicates Grimes failed to initiate administrative grievances concerning the October 15, 2008, alleged assault by the Tactical Team. *Id.*, Exhibit 1, ¶ 6.

---

*v. Peay*, 286 F. Supp. 2d at 530; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after the prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"), *abrogated on other grounds by Woodford v. Ngo*, 548 U.S. 81 (2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not also seek judicial review); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

This showing may not be dispositive, however, as it appears that the Warden may have convened a formal investigation into the incident. ECF No. 23, Affidavit/Declaration of Tanielle A. Grimes. The court is aware that within Maryland's Department of Public Safety and Correctional Services, once the Internal Investigation Unit (IIU) initiates investigation, the matter no longer is subject to the ARP process. *See Bogues v. McAlpine, et al.*, Civil Action No. CCB-11-463 (D. Md.), ECF No. 23, Exhibit 4 at 23; *Oliver v. Harbough, et al.*, Civil Action No. ELH-11-996 (D. Md.), Memorandum of December 19, 2011, ECF No. 31 at 7-8. In any event, the undersigned finds that the Warden's statement that an investigation was underway obviated Grimes's need to request his own investigation into the incident. Thus, defendants' invocation of the affirmative defense of failure to exhaust administrative remedies fails. Counsel shall provide copies of all documents relating to any internal or State Police investigation concerning the incident and shall disclose the names of the Tactical Team members, indicating whether counsel is authorized to accept service of process on each individual. Clearly, corrections personnel allegedly involved in the October 15, 2008, incident must be identified, served, and provided an opportunity to respond on the merits to the claim of excessive use of force.

Corizon, Inc.

To state a cognizable civil rights claim for denial of medical care, Grimes must demonstrate that the actions of medical personnel (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Grimes seeks damages from the contractual health care provider, but does not name actual employees alleged to have denied him health care. Any liability attributed to the contractual health care provider, Corizon, is based solely upon vicarious liability, otherwise known as the doctrine of respondeat superior. The law in the Fourth Circuit is well established that the doctrine does not apply in § 1983 claims, irrespective of whether the defendant is a private corporation or a municipality or other public agency. *See Love-Lane*, 355 F.3d at 782 (no respondeat superior liability under § 1983); *Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D. Md. October 22, 1992) (citing *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982)); *McIlwain v. Prince William Hospital*, 774 F. Supp. 986, 990 (E.D.Va. 1991). Thus, Corizon is entitled to dismissal in this case.

The court's inquiry, however, does not end there. Counsel for Corizon has provided portions of the medical record that clearly indicate Grimes received treatment for injury on two occasions while housed at BCDC, on December 17 and December 27, 2008.[6] Nothing in the record suggests he was treated for the injuries to his face, teeth, and body described by Grimes and his family members and alleged to have occurred at the hands of Tactical Team members on October 15, 2008. Grimes alleges that medical personnel did not intervene to treat him during their rounds on the tier "to send a message" based on the nature of his alleged crime. ECF

---

[6] In the first incident, Grimes was treated for injuries apparently resulting from an altercation; however, he told medical personnel that he fell from his bunk and hit his face. The examining nurse found no active bleeding with mild bruising and swelling around the right eye. The nurse cleaned Grimes' face, applied ice to the swelling, and gave him Tylenol for pain. ECF No. 14, Exhibit A, ¶ 3; Exhibit B at 1. On December 27, 2008, Grimes was again brought to the medical department following a fight. He was bleeding from the head and nose, had a deformity on the left side of the nose and crepitus (crunching) around the eye and a tender jaw. Grimes was transferred to Bon Secours Hospital, where in addition to abrasions and bruising on the face and scalp, he was diagnosed with a blow-out fracture of the left eye socket, a nasal fracture, and infection in his sinuses. The fractures were "closed" fractures which did not require surgery. *Id.*, Exhibit A, ¶ 4; Exhibit B at 2-10. After discharge from the hospital Grimes was admitted to the infirmary at Metropolitan Transition Center ("MTC"), prescribed an antibiotic, and given narcotics for pain. By December 31, 2008, Grimes no longer complained of blurred vision or pain. He was transferred to NBCI on or about January 8, 2009. His injuries apparently have healed without complication. *Id.*, Exhibit A, ¶ 5; Exhibit B at 11-17. The medical care provided for these injuries is not at issue here.

No. 23 at 2. It is unclear whether medical personnel were aware of Grimes's injuries or acquiesced to demands that he not be treated. Counsel has provided no affidavit from medical personnel assigned to Grimes's tier during the time at issue to resolve this question. For that reason, summary judgment in favor of Corizon shall not be granted at this time.

For these reasons, a separate order shall be entered granting dismissal of Baltimore City Detention Center, denying summary judgment as to all other defendants, and requiring additional briefing by the remaining parties.

June 29, 2012
Date

James K. Bredar
United States District Judge