**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

BRANDON GRIMES,                  :

      Plaintiff            :

          v.              :  CIVIL ACTION NO. JKB-11-2687

OTIS MERRITT, III, WARDEN        :
JUDE AGU
TASHA BUTLER-SCOTT               :
DERRICK E. JONES
RON G. JONES                     :
PERRY LARYEA
BABATUNDE K. OYETI               :
DAVON TELP
                    :
      Defendants

## MEMORANDUM

This civil rights action, filed pursuant to 42 U.S.C. § 1983, seeks compensatory and punitive damages for injuries plaintiff allegedly sustained during an October 15, 2008, beating at the hands of Tactical Team members employed by the Maryland Department of Public Safety and Correctional Services ("DPSCS") and assigned to the Baltimore City Detention Center ("BCDC").[1]

**Procedural History**

Plaintiff, currently incarcerated by the State of Maryland, filed a self-represented complaint against then-Warden Otis Merritt, III, the Tactical Team, BCDC, and BCDC's medical provider, Corizon, Inc. On June 29, 2012, the court dismissed BCDC, required further briefing by the remaining parties, and invited plaintiff to move for appointment of counsel. ECF Nos. 24 and 25. Exhaustion of administrative remedies under the Administrative Remedy

---

[1] Plaintiff also complains that after the beating he was denied a mattress, sheets, and toilet paper, and that his injuries went untreated. ECF No. 1 at 4.

Procedure ("ARP") process was deemed waived, based on an affidavit stating Merritt had assured plaintiff's family members that a formal investigation into the incident would be convened.  ECF No. 24 at 7-8.[2]

Thereafter, counsel for BCDC provided under seal a list of Tactical Team members who were on duty during various shifts on October 15, 2008[3] (ECF No. 28), and requested plaintiff provide information as to the time of day the alleged assault occurred.  ECF No. 29.  Counsel further indicated that BCDC administrators were unable to locate documents relating to any internal or State Police investigation concerning the incident.  *Id*.  On August 1, 2012, Corizon was dismissed from suit[4] and plaintiff was ordered to provide the time of the alleged assault, so that Tactical Team members might be further identified.  ECF No. 30.  Plaintiff complied with the court order, indicating the incident occurred during the 7 a.m. to 3 p.m. shift.  ECF No. 32.

On April 19, 2013, counsel for Warden Merritt and seven named members of the Tactical Team[5] answered the complaint, denying plaintiff's allegations and setting forth defenses of qualified immunity and failure to exhaust administrative remedies.  ECF No. 43.  Limited appointment of counsel was provided to assist plaintiff with discovery.[6]  ECF Nos. 50 and 51.

---

[2] This Memorandum adopts the pagination assigned through the court's electronic docketing system.

[3] The defendants are among forty-three correctional officers on the "Tactical Unit Call Down List."  Their names were provided to the court because they had reported to duty on October 15, 2008.  ECF No. 70-1 at 2, n. 1.

[4] Plaintiff never identified individual health care providers who allegedly refused to treat his injuries following the alleged attack.  The parties dispute whether plaintiff received any medical or dental treatment on or about October 15, 2008.  Defendants have presented record evidence suggesting that the only treatment plaintiff received from BCDC medical personnel concerned facial bruising and swelling related to two incidents that took place in December of 2008, when plaintiff fought with fellow prisoners.  ECF No. 70, Ex. 10-17.

[5] Although ten Tactical Team employees were identified, three individuals – Lanre A. Bolaji, Yuset Hunt-Chetham, and Cheryl A. White – no longer work at BCDC.  ECF No. 33 at 1-2.  Bolaji was served at his home address, and notified the Clerk that he had no recollection of the incident.  ECF No. 38.  There is no indication that Bolaji was later subjected to discovery or that service of process was obtained on Hunt-Chetham or White.

[6] The discovery process was protracted and required a hearing.  *See, e.g.,* ECF Nos. 54, 56, 58-65.  Gerard P. Martin, Esq., appointed to represent plaintiff solely with discovery, was terminated from further representation on June 17, 2014, and Joseph B. Tetrault was appointed in his stead.  ECF No. 66.  Ultimately, Mr. Tetrault withdrew from

Following the completion of discovery, defense counsel filed a motion for summary judgment on behalf of Warden Merritt and seven members of the Tactical Team. ECF No. 70.[7] The motion is opposed by plaintiff, who has requested a hearing.[8] ECF Nos. 88 and 89. Defendants have filed a reply. ECF No. 90. Plaintiff was granted an opportunity to submit a sur-reply (ECF No. 94), and has done so. ECF No. 93. After review of these and other pleadings and exhibits, for reasons noted herein, defendants' motion for summary judgment shall be GRANTED IN PART and DENIED IN PART and the matter scheduled for trial.

### Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club,*

---

representation and Stephen Z. Meehan, Esq., and Damien Dorsey, Esq., entered their appearances on plaintiff's behalf. ECF Nos. 79-80, 82 and 84.

[7] Defendant Merritt raises a defense under the doctrine of respondeat superior. The defendants identified as members of the Tactical Team argue that none has been identified as a participant in the alleged beating. All defendants claim plaintiff has failed to establish a denial of medical care or injury caused by the poor condition of his cell, and they argue they are entitled to qualified immunity. Each of these arguments is addressed herein.

[8] A hearing is not necessary to resolve the dispositive motion. *See* Local Rule 105.6 (D. Md. 2014).

*Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Rule 56(e)), *cert. denied*, 541 U.S. 1042 (2004). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In resolving the motion, this court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). Nonetheless, the court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## Discussion

It is uncontested that on October 15, 2008, plaintiff was assigned to administrative segregation and housed in a single cell, # 47, on the top tier in the T-section. Plaintiff, recently convicted for the murder of a Baltimore City police officer, was told the assignment to segregation was for his own protection.[9] ECF No. 88-1, Plaintiff's Decl., ¶¶ 2-3. Any agreement between the parties as to the material facts ends here.

<u>Plaintiff's Allegations</u>

Plaintiff affirms that on that day the bottom tier of the T-Section was set on fire. (ECF No. 88-1, Pl. Aff./Decl., ¶ 4.) After the fire was extinguished, the Tactical Team went "cell to

---

[9] Plaintiff was convicted on August 29, 2008. Sentencing occurred on December 31, 2008. *See* http://casesearch.courts.state.md.us/casesearch. Because he was already convicted at the time of the alleged assault, his claims are considered in light of the Eighth Amendment's prohibition against cruel and unusual punishment.

4

cell" removing people[,] starting with [Plaintiff's] cell." *Id.,* Pl. Aff./Decl., ¶ 5. When members of the Tactical Team entered his cell, they handcuffed and shackled him, then violently attacked him, screaming "Cop killer," and "You going to die up here today." *Id.* ¶ 6; Compl. 4, Sept. 19, 2011. Plaintiff states that his assailants delivered repeated blows to his face, sometimes using flashlights. *Id.* ¶ 7. After plaintiff's front tooth was knocked out, somebody on the team said, "That's enough you knocked out his teeth." ECF No. 88-3, Pl. Answer to Interrog. No. 2.

Plaintiff's assailants were wearing their riot gear, including protective masks, and plaintiff was not able to see their faces or otherwise identify them individually. ECF No. 88-1, ¶ 6. Plaintiff was then escorted off the tier. ECF No. 88-3, Pl. Answer to Interrog. No. 2.

A declaration offered by fellow prisoner Wayne Boone supports plaintiff's version of events. Boone avers that on October 15, 2008, he heard officers order the opening of plaintiff's cell, heard sounds of a scuffle, and saw officers walk past his cell with plaintiff, who had blood dripping from his mouth. Boone, the tier custodian, further states that an hour later, he was ordered to clean plaintiff's cell, which had blood on the floor. Boone picked up a bloody tooth from the floor and placed it with plaintiff's other property. Boone states he later found a trail of blood while cleaning the tier hallway. ECF No. 88-2 at 3.

Plaintiff states that the Warden and Assistant Warden were present in the hall after he was removed from the top tier of T-section, and saw the severity of his injuries. ECF No. 88-1, Pl. Aff./Decl., ¶ 9. Wearing only his bloody tank top, boxers, socks, and tennis shoes, plaintiff was taken to K-section, a general population tier where previously he had been housed. *Id.* ¶ 8; ECF No. 88-4, Pl. Depo. Tr. 10:14-15. The cell was bare, lacking basic essentials including toilet paper, a mattress, and sheets. ECF No. 88-1, ¶ 8. His requests to be taken to the medical unit were ignored. ECF No. 88-4, Pl. Depo. Tr. 40:1-12.

Plaintiff states that he continued to be denied medical treatment that day and that "[his] eyes were blackened, [his] face was swollen and bleeding, and [his] tooth was missing." ECF No. 88-1, Pl. Aff./Decl., ¶ 10. Sometime the next day, on October 16, 2008, plaintiff was taken to the medical unit where he saw a dentist who took x-rays and informed him that the numbness he described was caused by damage to the root and nerves surrounding the missing tooth. Plaintiff placed sick call slips but did not receive medical care for his other injuries. ECF No. 88-4, Depo. Tr. 13:14-21; 14:1-6.

Plaintiff's mother, Charlene Grimes, and wife, Tanielle Allen, learned of the assault. ECF No. 23, Charlene Grimes Declaration, Tanielle Allen Declaration. Ms. Grimes contacted Merritt, who allowed Ms. Grimes and Ms. Allen to visit despite the fact that they had already used their visit for the week, on October 12, 2008. ECF No. 23, Charlene Grimes Aff./Decl.; ECF No. 88-4, Pl. Depo. Tr. 21:6-14. Ms. Grimes and Ms. Allen visited plaintiff on October 16, 2008, and observed that plaintiff's tooth was missing and that he was badly bruised. ECF No. 23, Allen Aff./Decl. Subsequently, Ms. Grimes and Ms. Allen met with Merritt, who advised them that "the force used against Brandon was unnecessary and that the resulting dental concerns would be taken care of, as would related health concerns." ECF No. 23, Charlene Grimes Aff./Decl. Merritt also advised them that an investigation was underway. ECF No. 23, Tanielle Allen Aff./Decl.

Plaintiff claims his health concerns were never dealt with, and since the incident his upper molars adjacent to the knocked-out tooth have fallen out. ECF No. 88-4, Depo. Tr. 67:4-14. He further states that the incident "resulted in physical damages to [his] body, including dental damages (loss of teeth, mouth bleeding, and on-going dental problems), bruising, broken capillaries in [his] eyes, and bloody urination." ECF No. 88-3, Pl. Answer to Interrog. No. 12.

Plaintiff states he experiences periodic numbness in his mouth and has suffered emotional damage, including aggravation of his bipolar disorder, stemming from this incident. *Id.*

### Defendants' Response

Defendants offer a vastly different version of events. Around 7:39 a.m. on October 15, 2008, officers assigned to the Tactical Team were conducting cell searches on an entire section of BCDC. ECF No. 70-4. No incident between the Tactical Team and any prisoners is noted in the log book. *Id.*

Stripped to essentials, defendants' argument is that the incident never occurred. In addition to the log book, they point to plaintiff's inability to provide any physical description of the three Tactical Team members allegedly involved,[10] other than to state that they likely were black, based on plaintiff's observation that nearly all the correctional officers at BCDC were black. ECF No. 70-5, Pl. Dep. Tr. 11:1-14. Defendants further note that the dental injuries described closely resemble those observed by medical personnel following two incidents involving prisoner-on-prisoner assaults occurring on December 17 and 27, 2008. ECF Nos. 70-17 through 70-20.

## Analysis

### The Boone Declaration

Defendants have raised a preliminary issue that must be addressed before the court turns to the substance of the motion for summary judgment. In their reply,[11] they argue that Boone, plaintiff's witness to the assault, recanted his entire declaration in a May 24, 2015, letter sent to

---

[10] Plaintiff indicates the only Tactical Team officer he knew by name was Tasha Butler-Scott, but states he could not "see who actually assaulted" him and did not know whether she was among the officers who entered his cell on October 15, 2008. ECF No. 70-7, Pl. Depo. Tr. 77:11-18.

[11] Defendants' argument concerning the Boone declaration might be better served if presented as a motion to strike. Nonetheless, defendants' argument will be addressed herein as presented.

defense counsel. Relying on the letter, defendants argue that Boone's declaration is not admissible evidence and should not be considered by this court. They suggest that without Boone's declaration, plaintiff cannot support his allegation that they are responsible for his alleged injuries.

Plaintiff argues that Boone's letter recanting his previous declaration is not authenticated, is not supported by a declaration, and contains no indicia of trustworthiness sufficient to overcome Boone's original sworn declaration. ECF No. 92 at 2. Plaintiff states that in this Circuit "it is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment," *Orsi v. Kirkwood*, 999 F.2d 86, 90 (4th Cir. 1993), and that a letter, in particular, "must be attached to an affidavit and authenticated by its author in the affidavit" in order to be admissible at the summary judgment stage. *Id.*

Plaintiff's reliance on *Orsi* is misplaced, given the 2010 amendment to Rule 56. *See Wonasue v. Univ. of Maryland Alumni Ass'n*, Civ. No. PWG-11-3657, 2013 WL 5719004, at *8 (D. Md. October 17, 2013). Under amended Rule 56, "facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the new requirement is that the party identifies facts that *could be* put in admissible form." *Wake v. Nat'l R.R. Passenger Corp.*, Civ. No. PWG-12-1510, 2013 WL 5423978 at *1 (D. Md. September 26, 2013) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, Civ. No. DKC-11-3415, 2013 WL 291705 at *1 n.1 (D. Md. June 12, 2013)).

Rule 56(c)(2) now requires a "multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method to doing so at trial." *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10–cv–01144, 2011 WL 5169384, at *2 (W.D. Mich. October 31, 2011),

*cited in Williams v. Silver Spring Volunteer Fire Dept.*, __ F. Supp. 3d __, Civ. No. GJH-13-2514, 2015 WL 237146, at *3 (D. Md. January 16, 2015).  Here, defendants bear the burden of showing that the letter is admissible as presented or to explain the admissible form that is anticipated.  Fed. R. Civ. P. 56, Committee Notes, 2010 Amendments.

Under Federal Rule of Evidence 901, the party seeking to properly authenticate a document "must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  The burden to authenticate under Rule 901 is not high.  "[O]nly a *prima facie* showing is required" and "the proponent need only present evidence sufficient to support a finding that the matter in question is what the proponent claims."  *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009), *cited in United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014).  Counsel for defendants states she received the letter purportedly written by Boone on June 4, 2015.  ECF No. 92 at 2.  Counsel does not indicate that she met or spoke with Boone to verify that he is the author of the letter.  Thus, counsel cannot establish that she has personal knowledge that the letter does in fact represent Boone's recantation of his earlier declaration.

In any event, Boone's declaration adds little to the pending dispositive motion.  Defendants argue that without it, plaintiff cannot support his allegations that they are responsible for his alleged injuries, because plaintiff's family and others did not observe the incident.  ECF No. 90 at 2.  This argument is fallacious, given that plaintiff has described the incident and the injuries sustained.  While Boone may or may not testify at trial, his declaration – which contains information that merely corroborates plaintiff's version of events and has no impact on the outcome of the pending dispositive motion – shall remain part of the record.

Excessive Use of Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Assuming plaintiff was beaten without provocation as described, he clearly was the victim of excessive force in violation of the Eighth Amendment.

While the court is sympathetic to plaintiff's claim of unprovoked assault, it is apparent that after an arduous discovery process, plaintiff remains unable to state with certainty the number of individuals who entered his cell, much less identify or even describe these individuals by size or sex, other than to state they likely were black and were dressed as members of the Tactical Team.[12] At the end of the day, plaintiff must carry the burden of proof in order to establish liability against the seven named members of the Tactical Team. He has failed to do so, and each is entitled to summary judgment with regard to plaintiff's Eighth Amendment claim of excessive use of force.

Supervisory Liability

Defendant Merritt seeks dismissal, arguing that the allegations against him are based solely on supervisory liability under the doctrine of respondeat superior.[13] This argument overlooks *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994), which allows a supervisor to be held liable where (1) the supervisor had actual or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to another, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate

---

[12] There is no proof that the masked individuals who entered plaintiff's cell were in fact members of the Tactical Team.

[13] *See, e.g., Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Nothing in the record implicates Warden Merritt in the alleged assault or suggests Merritt had knowledge that such an assault was imminent.[14] However, the affidavits provided by plaintiff indicate Merritt and an assistant warden observed plaintiff's condition as he was moved down the hall after the assault, thus calling into question whether Merritt had knowledge that plaintiff had sustained injury, possibly during an encounter with correctional staff. Thus, Merritt's lack of direct participation in the events of October 15, 2008, does not end inquiry into his liability.

Accepting as true the affidavits provided by plaintiff and his family members, Merritt expressly acknowledged that an incident had occurred, and stated that "the obvious use of force against [Grimes] was not condoned by the detention center and…an investigation was being conducted." ECF No. 23, Affidavit/Declaration of Tanielle A. Grimes; Affidavit/Declaration of Charlene Grimes. Merritt's subsequent failure to deliver on his promises to convene an investigation and take care of the resulting dental and medical concerns is sufficient to support a finding of deliberate indifference.[15] Summary judgment in favor of Warden Merritt is therefore denied.

---

[14] Nor has such a showing even been suggested with regard to the conditions of plaintiff's cell.

[15] Plaintiff alleges that his repeated requests for medical treatment for black eyes, facial swelling and numbness, a missing tooth, and bloody urine were ignored. He avers that when he was taken to the medical unit a day and a half later, the care received was limited to examination by a dentist, who took x-rays of his mouth. ECF No. 88-1 at 3; *see also* ECF No. 88-4 at 2. Defendants contend this examination by a dentist did not occur, relying on the affidavit of Registered Nurse Adaora Odunze, BCDC's agency contract operations manager, who found no medical records suggesting that plaintiff received care for any injuries in October of 2008. ECF No. 70-16 at 2.
  Defendants rely on the Odunze affidavit to support their position that plaintiff's only facial injuries occurred in December of 2008 as a result of altercations with other prisoners, negating plaintiff's allegations of a vicious attack by members of the Tactical Team. Plaintiff provides no explanation for the lack of record evidence supporting his

Conditions of Confinement

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the prisoner's health or safety was disregarded.[16] *See Wilson*, 501 U.S. at 298. In other words, prison personnel must know the prisoner faced a serious danger to his safety which they could, but did not, avert. *See Brown v. North Carolina Dept. of Corrections*,

---

statement that he received limited evaluation by a dentist several days after the October 15, 2008, incident. This lack of evidence, when viewed in light of the affidavits provided by Grimes's family members who received Merritt's assurance that investigation was being conducted, just as readily suggests that Merritt may not have delivered on his assurance to Grimes's family that "the resulting dental concerns would be taken care of, as would related health concerns." ECF No., 23, Affidavit/Declaration of Charlene Grimes. The accuracy of defendants' medical records is further called into question by a notation suggesting plaintiff received "Med Services" on November 3 and 10, 2008. ECF No. 70-11 at 48, 55.

[16] Such conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992); *see also Iko*, 535 F.3d at 238 (defendants' actions are not actionable unless, "in light of preexisting law the unlawfulness of those actions is apparent") (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Prison officials are not required to have "the legal knowledge culled by the collective hindsight of skilled lawyers and learned judges, but instead only the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." *Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007).

612 F.3d 720, 723 (4th Cir. 2010) (citing *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). The objective prong of a conditions claim requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions, *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993); *see also Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003), and only "extreme deprivations" are adequate to satisfy the objective component of such a claim. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

Plaintiff states he was taken to K-Section, a general population area, immediately after the October 15, 2008, assault, where fellow prisoners commented on his injuries and attempted to get staff to take him to the medical department. Plaintiff's Deposition, ECF No. 88-4 at 2. He claims he also "was denied a mattress, sheets, toilet paper and other provisions when placed in cell 40 of the K Section. . . ." ECF No. 1 at 4; *see also* Pl.'s Depo, ECF No. 88-4, p. 5. Defendants provide records to support their statement that plaintiff was not moved to cell 40 of K-Section until December 16, 2008, two months after the alleged assault by the Tactical Team and one day before the altercation with a fellow prisoner that sent plaintiff to a hospital emergency room.[17] ECF No. 70-22 at 1; ECF No. 70-17 and 70-18 at 2.

Whether plaintiff was placed in cell 40 in October 2008[18] or December 2008[19] is not material to the outcome of his claim concerning a mattress, sheets, toilet paper, and other provisions. Plaintiff has failed to allege – much less demonstrate – that he suffered actual injury as a result of the conditions of the cell.

---

[17] As a result of injuries received in the December 2008 altercation with a fellow prisoner, plaintiff was treated at Bon Secours Hospital for abrasions and bruising of the face, a fractured eye orbit, and a broken nose. ECF No. 70-12.

[18] Plaintiff supports his claim that he was moved to another tier based on the Boone declaration. ECF No. 88-2 at 3.

[19] If plaintiff was placed in cell 40 in December, two months after the alleged assault by Tactical Team officers, his allegations concerning cell conditions would be dismissed for lack of administrative exhaustion as required pursuant to the Prison Litigation Reform Act, codified in relevant part at 42 U.S.C. § 1997e(a).

Conclusion

Assuming plaintiff was beaten on October 15, 2008, plaintiff has failed to prove the involvement of the named Tactical Team officers. A determination as to whether plaintiff was denied prompt and adequate medical and dental care for injuries sustained on that day by Warden Merritt cannot be determined on the record now before the court.

Accordingly, defendants' motion for summary judgment is granted as to the alleged assault at the hands of members of the Tactical Team and the conditions of plaintiff's cell, but is denied with regard to the deliberate indifference claim against Warden Merritt.[20]  A separate Order follows.


Date: August 31, 2015                              _____/s/_____
                                                   James K. Bredar
                                                   United States District Judge

---

[20] A prisoner's right under the Eighth Amendment to receive medical treatment was clearly established. Defendant Merritt's claim of qualified immunity as to the denial of medical care is therefore denied.